GRAY *v.* STATE.

(*Knoxville,* September Term, 1950.)

Opinion filed December 9, 1950.

528

FRANK BRYANT and B. B. SNIPES, both of Johnson City, for plaintiff in error.

J. Malcolm Shull, Asst. Atty. Gen., for the State.

Mr. Justice Burnett delivered the opinion of the Court.

The plaintiff in error was convicted of voluntary manslaughter, with his punishment fixed at confinement in the penitentiary from two to ten years from which judgment he has appealed and assigned errors.

A reversal of the judgment must result for reasons hereinafter stated. Since there must be a reversal and remand we make no comment on the evidence of guilt or innocence of the accused.

Before the State had closed its proof in chief the district attorney general offered a witness by the name of Walker and obviously from the examination the only purpose of offering this witness was to show that he had gone to the home of the plaintiff in error to purchase a drink of whiskey. On objection the trial judge sustained the objection of the plaintiff in error as to the introduction of this evidence. After the trial judge had sustained this objection the district attorney per-

sisted in asking various and sundry other questions which were asked purely to try to lead or make the jury think that the plaintiff in error was a bootlegger and that the purpose of the witness Walker going to his home was to purchase whiskey. The assignments going to this question are numbers 5 and 6. These assignments must be sustained.

Obviously there are several reasons why such questions are not fair. In the first place the plaintiff in error had never taken the stand and his character had not been placed in issue. This being true his character could not be attacked by the introduction of evidence even though it involved the commission of acts that involved moral turpitude. Clearly the question of being a bootlegger did not involve moral turpitude and, therefore, did not affect the credibility of the plaintiff in error. *Tucker* v. *State,* 149 Tenn. 98, 99, 121, 257 S. W. 850; secondly, the State clearly was not entitled, even though the plaintiff in error's character had been put in issue, by other witnesses, to put the general character and reputation of the plaintiff in error in issue by requiring him to answer to the charge of particular acts unless they were the subject of the lawsuit. Of course the plaintiff in error after he did take the stand might be asked about matters involving moral turpitude and particularly about special matters but his answer thereto would be final and such inquiry as made of him should be confined to matters of general reputation. *Zanone* v. *State,* 97 Tenn. 101, 36 S. W. 711, 35 L. R. A. 556.

The error here committed might not have been prejudicial if it had been dropped when the trial judge sustained the exception to the introduction of this evidence, but when the attorney general persisted in asking other

questions, to get the matter before the jury that the plaintiff in error was a bootlegger, this was prejudicial. These questions clearly were asked only to prejudice the rights of the plaintiff in error in the minds of the jury. The questions here asked might be thought of in the same way as the questions asked by the district attorney general in *Kirby* v. *State,* 182 Tenn. 16, 184 S. W. (2d) 41, 42, wherein this Court speaking through MR. JUSTICE GAILOR said: ''The rule with regard to the admission of evidence of other offenses on a criminal trial is well stated to be: 'Evidence material to the issue under investigation in a criminal case is never rendered incompetent because it tends to show that the accused has committed other crimes. It is competent or incompetent according to whether it is relevant to the issue on trial and has probative value. If incompetent by that test, its tendency to show guilt of another offense may cause it to be prejudicial to the accused and therefore ground for reversal.' *Woodruff et al.* v. *State,* 164 Tenn. 530, 539, 51 S. W. (2d) 843, 845.''

This evidence, attempted to be elicited from the witness Walker, was the first indication by the district attorney general of his inclination to try to prejudice the jury against the plaintiff in error.

Assignments of error, numbers 7, 8, 9 and 10, are all on the question of the district attorney general's cross-examination of the wife of the plaintiff in error. In this he read from and introduced (in turn arguing to the jury in his concluding argument) a divorce bill that this wife had filed against the plaintiff in error some two years before. All of these assignments must be sustained.

This divorce bill, in the first instance, was offered to try apparently to impeach the wife of the plaintiff in

error. This divorce bill, which was filed some two years before, among other things, alleged that the plaintiff in error beat her and had been having intercourse with other women. The introduction and reading of this and the manner in which it was handled was done clearly to the prejudice of the plaintiff in error. The introduction of this evidence through this divorce bill brought into play various and sundry facts and circumstances which were not at issue in the instant lawsuit and did not bear in any way upon the guilt or innocence of the plaintiff in error. The introduction, therefore, of these things through this method was clearly prejudicial to the plaintiff in error. One accused of a crime comes into court presumed to be innocent, this presumption likewise goes as to a good character unless he puts this question in issue. It is clearly prejudicial to attack this character by the introduction of a separate pleading filed years before wherein allegations are made against his character. If this were permitted, litigation in a particular lawsuit might never cease. If this were permitted clearly then the accused would be entitled to bring in witnesses to answer each and every one of these allegations. The facts introduced in a lawsuit must be confined to those surrounding the question under investigation. This divorce bill should be excluded for all purposes because of its inevitable iniquitous result if admitted for any purpose. When offered against the plaintiff in error it was hearsay evidence. The matters therein asked the wife were collateral matters, that is, as to the date of her marriage as compared with that shown in the divorce bill and any answer that she made thereon was binding upon the State. The defendant had taken the stand but he had not placed his character in issue because he

had not offered any evidence thereof by himself or by his witnesses. Under such circumstances specific offenses involving moral turpitude might have been asked the plaintiff in error but they cannot be produced by other witnesses. *Keith* v. *State,* 127 Tenn. 40, 44, 152 S. W. 1029.

 Then too, the introduction of this divorce bill formed a basis for the concluding argument of the district attorney general to the jury. The district attorney general said in part: "—I didn't make this man's record; I didn't make this woman's record. But it is a strange thing to me that people like that, a man has unbecoming talk, that they become outraged; up to then he was just there to see them. I have nothing to say against this woman, she made the record and it has been introduced to you right here. Her name is signed to it and she has sworn to it, in which she says he whipped her and beat her, kicked her, that he was running around with a woman by the name of Ann Barnes, a woman of the baser sort, and she filed suit for divorce on those grounds; that Gray had been caught with this woman on several occasions."

The State argues that the introduction of this divorce bill and this argument was proper because the defense of the plaintiff in error in the instant case was that the deceased had made insulting proposals to his wife and that as a result of these insulting proposals and an attempt to commit them, while almost in the presence of the plaintiff in error, that this brought on the fight which eventually resulted in the death of the deceased.

Of course this argument based on this inadmissible hearsay evidence when the plaintiff in error had not

534

placed his character in issue was improper and prejudicial to the plaintiff in error.

 Assignment number 11, must also be sustained. This assignment is based likewise on the argument of the district attorney general and the charge of the court on portions of this argument which were seasonably objected to. The argument and ruling of the court thereon are as follows:

Attorney General: ". . . You need not worry about what the Supreme Court is going to say about this or anything like that. You give him what he deserves now and the Supreme Court can take care of it if there is anything wrong. That is the privilege they have. The State doesn't have that privilege—the privilege of appeal.

"Mr. Bryant: If your honor please, this jury is not supposed to rely upon the Supreme Court to correct its mistakes; it is supposed to act on the evidence; we object to this line of argument.

"The Court: I overrule your objection.

"Mr. Bryant: We save exceptions.

"Attorney General: I wish Mr. Bryant would either talk louder or quit one. I am just replying to his argument on the question of appeal. I don't know why he makes those objections, he has made them a thousand times before. He ought to find out what to object to.

"You should send this defendant up for ten years. But, as I say, we have no appeal over here; if you make a mistake now there is no way in the world that the good people in this county can get it corrected.

"Mr. Bryant: We continue our objection to the argument of the Attorney General.

"Attorney General: He cannot be retried if he is turned loose on this occasion.

"Gentlemen of the jury, I don't believe or think that you could have any trouble with convicting this man, sending him for a number of years, and if the other court wants to do something about it, that is its privilege.

"Mr. Bryant: May we have a ruling on our objection, your honor?

"The Court: I will rule on that Mr. Bryant.

"The Court: Gentlemen of the jury, the Attorney General argues that if you gentlemen turn this man loose that the State has no appeal; the State is bound by that; but if you find him guilty the defendant can appeal. That is the law. I instruct you gentlemen that that doesn't concern you. You just simply pass on this case under the instructions. the Court gives you and according to the law and the evidence in the case regardless of that being the law."

If when objection was made the trial judge had merely sustained the objection and told the jury not to consider it for any purpose there would have been no error, but when the trial judge went on and told the jury that the Attorney General was correct in his statement, but that they should not consider the matter, this was error. Our reason for making this statement is that in the first instance the trial judge by making the statement that the Attorney General was correct in his assertion added emphasis to the remarks of the Attorney General which were obviously very prejudicial. In the second place, the instruction given by the trial judge did not go far enough and explain to the jury just what position the plaintiff in error would be in on an appeal. The trial judge of course should not have and it was not necessary

for him to explain to the jury just what the procedure in the appellate court was. This was none of the jury's business. It was their duty to pass on the evidence under the facts adduced and as to what our duty is was not necessary to explain to the jury. Matters of appeal obviously are not proper questions to be argued before a trial jury. They are questions of law and are improperly injected in the last argument or in any argument. It seems to us too that this feature of the argument was made for the purpose of prejudicing the plaintiff in error and trying to get it over to the jury that if they did not convict him now he could not be convicted and then that the Supreme Court would correct any errors that they made thus allowing them to escape part of their responsibility.

Then too, on re-argument of the question the trial judge did not instruct the jury to disregard that argument and the trial court's action clearly showed that he approved it. This, we think was error.

A jury in the trial of both criminal and civil cases had certain grave and serious responsibilities. When a jury is told an Appellate Court will correct any error they might make they are being told they may shirk certain of these responsibilities. Any argument of the kind is erroneous and should not be made. If such an argument is made, either intentionally or inadvertently it is the duty of the trial judge of his own motion and without objection to instruct the jury that they have no right to think for a moment that their verdict is subject to review by an Appellate Court. This rule, obviously, applies to the trial of both criminal and civil cases.

 Under the circumstances heretofore detailed we think that the action of the court in permitting these things to be introduced in evidence and the argument of the Attorney General based thereon are prejudicial matters and are not cured by the Harmless Error Statute. Chapter 32 of the Public Acts of 1911.

The result is that the case must be reversed and remanded for a new trial consistent with this opinion.

All concur.