FREDERICK for Use and Benefit of POLK v. NEW ENGLAND FIRE INS. CO.—259 S. W. (2d) 879.

Middle Section.   February 27, 1953.

Petition for Certiorari denied by Supreme Court, June 5, 1953.

Bailey, Ewing & Powell, of Nashville, for appellant.

Eugene Jackson, Jr., of Nashville, for appellee.

HOWELL, J. This suit originated in the Circuit Court of Davidson County and the declaration alleged among other things that the plaintiff, Mrs. Elizabeth Frederick, was the owner of a house at 1207 Maxey Lane in Davidson County and that in August 1950 the defendant Insurance Company sold to the plaintiff a fire insurance policy upon this house in the amount of $10,000 for a term of five years and that on or about January 12, 1951, the house was totally destroyed by fire. The declaration further alleged that plaintiff had complied with all the terms of the policy by giving proper notice, by filing sworn proof of loss and giving all information requested by the defendant and complying with the terms of the policy. It was further alleged that the property insured

was encumbered by a deed of trust securing an indebtedness to Willie Mae G. Polk, Trustee, and that the policy bore an endorsement containing a standard mortgage clause in favor of said Trustee. The declaration further alleged that the defendant had refused to pay its obligations under this policy and that its refusal was in bad faith and it was therefore liable for the amount of the loss, which was more than the amount of the policy, and for the penalty of 25% as provided by Section 6434 of the Code of Tennessee, and that by reason of defendant's refusal to pay the plaintiff had suffered additional expenses, loss and injuries in excess of the amount of the policy.

The defendant filed a plea of not guilty and later by order of the Court under Section 8767 of the Code it filed nine special pleas. The plaintiff joined issue on these pleas and the case was heard by the Circuit Judge and a jury and resulted in a judgment in favor of the plaintiff. Upon motion of the defendant a new trial was granted and the case was again heard by the Circuit Judge and a jury and resulted in a verdict for the plaintiff for the amount of the policy and unearned premium of $281, interest and penalty, in all $13,491.33, and the costs of the case.

By proper procedure the defendant has perfected an appeal in error to this Court and has assigned errors which we will not discuss separately.

It is mainly insisted for the defendant that there is no evidence to support the verdict of the jury.

It is well settled that this Court will not weigh the evidence or pass upon its preponderance but will consider all evidence favorable to the plaintiff and take as true the strongest legitimate view of such evidence and discard all unfavorable evidence or inferences. It will not review

the evidence to determine where the truth lies but only to find out whether or not there is any substantial evidence to support the verdict of the jury, approved by the Trial Judge.

In Mitchell v. Farr, 32 Tenn. App. 200, 222 S. W. (2d) 218, 220, this Court said:

"In these cases the jury heard the witnesses testify and under the charge of the Court the cases were properly submitted to the jury who are triers of facts, and where there are conflicting facts in the evidence, the verdict of the jury is conclusive on appeal. Jackson v. B. Lowenstein & Bros., 175 Tenn. 535, 136 S. W. (2d) 495; Pulley v. Cartwright, 23 Tenn. App. 690, 137 S. W. (2d) 336; Getz v. Weiss, 25 Tenn. App. 520, 160 S. W. (2d) 438; Nashville C. & St. L. Ry. v. Reeves, 25 Tenn. App. 359, 157 S. W. (2d) 851; Faulk v. McPherson, 27 Tenn. App. 506, 182 S. W. (2d) 130.

"In Jackson v. B. Lowenstein & Bros., supra, our Supreme Court said: 'Appellate courts should not lightly assume primary duty of determining liability or nonliability in actions of tort, but should leave such duty with the jury as triers of facts, and if they act arbitrarily courts should then supervise their action.' "

We have carefully read and considered these many pages of testimony and the volume of exhibits and find that it is replete with contradictions.

There was substantial testimony from which the jury could have found that the plaintiff, a woman about 56 years of age, had bought the insured property in February 1948 for $7,050 and had expended in improvements on it the sum of $2,540; that she and her daughter Mrs. Maud Myers and son-in-law Lyod Myers moved into the

house in August 1950, and it was totally destroyed by fire about 1:00 A. M. on January 12, 1951; that at the time of the fire the plaintiff was asleep at her son's home in Madison, Tennessee, Mrs. Myers was confined at the Vanderbilt Hospital and Lyod Myers was in Paducah, Kentucky; that on the day before the fire the plaintiff left the home of her son about noon, went by her house to get something and returned to Madison; that at about 7:30 that night she went with a friend to visit her daughter at the hospital and stayed there until about nine o'clock and on her way home she stopped on Holly Street and got her friend Margaret Burton and they went to the house on Maxey Lane to get something for her daughter and to bank the furnace, the weather being very cold; that she got Margaret Burton to go by the house with her because she did not want to go there at night alone; that she had turned on the lights, banked the furnace, drank a glass of milk, got some clothes for her daughter and they left the house about 10:30 P. M., that she took Margaret Burton to her home and returned to the son's home at Madison about 11:15 P. M.; that a lady, Mrs. Rawls, who lived next door to the house on Maxey Lane turned in the fire alarm at 12:44 A. M.; that the house and contents were totally destroyed and the fire was at once reported to the defendant and proof of loss filed on February 26, 1951; that everything demanded by the defendant was furnished, including plans and specifications for the house; that the defendant demanded an examination under oath and this was conducted by representatives of the defendant; that, on April 30, 1951, the defendant notified the plaintiff by letter that she had not sufficiently complied with the portion of the insurance contract relating to Proof of Loss and the suit was instituted on June 5, 1951.

Some time after the letter of April 30, 1951, the plaintiff learned that the defendant was taking the position that the plaintiff had either burned the house herself or had it burned.

■ The principal witness for the defendant was a man named William Yates about 32 years of age, who never went to school and could not read or write and who testified by deposition filed in the case. Yates was a man of bad reputation, had served time for law violations and we find that the jury was amply justified in rejecting his testimony. Yates has not been arrested charged with arson in this case nor has he been before the grand jury in connection with this fire.

■ In connection with the liability of the defendant for the penalty the record justified the jury in concluding that the fire occurred on January 12, 1951, and the house was totally destroyed, the defendant was properly notified and proofs of loss filed and all necessary information given, the policy contained a standard mortgage clause payable to the Trustee and no effort has been made to pay off the mortgage, the interest on which is still accumulating, the insured was required to submit to a lengthy examination under oath by representatives of the defendant company and by the office of State Fire Marshal and defendant has continued to refuse to pay any of the loss and plaintiff had to employ counsel and incur the other necessary expenses of a lawsuit. The Section of the Code 6434 involved, is as follows:

"Additional liability upon insurers for failure to pay promptly insurance losses when refusal is not in good faith.—The insurance companies of this state, and foreign insurance companies and other persons doing an insurance business in this state, in all cases when a loss occurs and they refuse to pay the same

within sixty days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss and interest theron, a sum not exceeding twenty-five per cent on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy; and, provided, further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.''

Section 6175 of the Code of Tennessee is as follows:

''When any person shall as trustee, mortgagee, assignee, or otherwise, possess or have any fire insurance policy on realty made payable to such person, or other person as his interest may appear, then such insurance as to the interest of said trustee, mortgagee, assignee or other person therein named shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured, * * * .''

The holder of the mortgage in this case has not been paid.

The question whether or not the defendant acted in good or bad faith in its refusal to pay its obligations under the policy was one of fact for the jury.

In the case of Tennessee Farmers Mutual, etc. v. Thompson, 12 Tenn. App. 591, this Court said:

''As to the penalty allowed, there is ample evidence to sustain it as to the amount—evidence that the plaintiffs have incurred that much of additional expenses, loss and injury entailed by the refusal of the

594

defendant to pay. The statute (Shannon's Code, section 3369a141) makes the question of good or bad faith in refusing to pay, a question for the jury in such a case where there is any evidence of bad faith. The defendant Company must be judged by the acts of its agent.''

See also many other cases.

The whole case was fully and ably presented to the Court and jury and under a fair and accurate charge by the Court the jury found that the refusal to pay by the defendant was not in good faith and its verdict was approved by the Trial Judge. We cannot say that there was no evidence upon which the jury could base its conclusion.

█ It is insisted that the Court erred in excluding the testimony of the lady who ran a storage and transfer company, Mrs Bertha Shaft, as to the hauling of some furniture. We cannot say that there was any reversible error in excluding Mrs. Shaft's testimony which did not connect the plaintiff with the transactions testified about and which was mostly hearsay.

From a careful consideration of the entire record we cannot say that there is any merit in the assignments of error and they are overruled.

The judgment of the Circuit Court is affirmed and a judgment will be entered here in favor of the plaintiff Mrs. Elizabeth Frederick, individually and for the use and benefit of Willie Mae G. Polk, Trustee, against the defendant New England Fire Insurance Company for the sum of $13,491.33 and interest from June 24, 1952, and the costs of the case.

Affirmed.

Felts and Hickerson, JJ., concur.