## WILLIAM IRVIN HUNT *v.* STATE OF MARYLAND

[No. 336, Initial Term, 1967.]

444

*Decided November 16, 1967.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Ralph S. Greil* for appellant.

*Lewis A. Noonberg, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Marvin H. Anderson, former State's Attorney for Anne Arundel County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was found guilty on June 27, 1966 of two counts of possession and control of a narcotic drug by a jury in the Circuit Court for Anne Arundel County. After a further finding of guilt as to an addendum to the indictment by Chief Judge Matthew S. Evans, sitting without a jury on July 11, 1966, appellant was sentenced to six years imprisonment on each count, the sentences to run concurrently. The principal question on this appeal is whether appellant's statement to the police, which was introduced in evidence over his objection at the trial, was inadmissible in view of *Miranda v. Arizona,* 384 U. S. 436.

The facts essential to a determination of the appeal are these: appellant was a lawfully confined inmate in the Maryland House of Correction on January 13, 1966. On that day, a guard at the Institution, Officer Mervin Gray, observed several inmates gathered around the locker of inmate Paul Price. Intending to search the locker, Gray called for help and, at that time, observed Price from a distance of about thirty feet, throw an object to appellant which appeared to be an eyeglass case. Appellant put the object inside of his jacket pocket. Gray removed it from the appellant's pocket and found $27.00 and some decks of powder inside a brown envelope which had Price's name on it. The contents of the eyeglass case were then placed in an envelope and sealed, after which they were taken to the Assistant Warden, who, on January 17, 1966, at the Institution, delivered it to Sergeant Gary Grant of the Maryland State Police. On that same day, Grant subjected the powder to a test, as a result of which he interrogated appellant in the Assistant Warden's office. Grant warned the appellant that he did not have to answer any question, and "that he was entitled to counsel, that he didn't have to talk to me at all * * *." Appellant told Grant that he knew of his rights, but nevertheless gave an oral statement in which he admitted that he had the eyeglass case in his possession; "that he suspected it contained contraband and he was scared and he quickly picked it up and put it into his jacket pocket"; and that he knew Gray had seen him, and that Gray had taken it from him. The powder was later determined to be heroin hydrochloride, a narcotic drug.

As appellant's trial commenced after the decision in *Miranda* was rendered on June 13, 1966, the rules of law enunciated

therein are clearly controlling, if applicable. *Johnson v. New Jersey*, 384 U. S. 719; *Gaudio and Bucci v. State*, 1 Md. App. 455. While the record indicates that appellant was advised of his right to remain silent, and to obtain counsel, he was not advised, as required by the *Miranda* decision (a) that anything he said would be used against him in court, and (b) that he had a right to have counsel present during the actual questioning and to consult with him, and (c) that, if indigent, an attorney would be appointed to represent him.[1] We hold that failure to fully advise the appellant of his *Miranda* rights prior to interrogation necessitates a reversal of his conviction, *Robinson v. State*, 1 Md. App. 522, unless, as contended by the State, (1) the error was harmless since the appellant took the witness stand and actually confirmed the substance of his statement, and (2) that *Miranda* is not applicable to persons who, like appellant, were already in penal custody at the time of the interrogation.

In *Chapman v. California*, 386 U. S. 18, 17 L. Ed. 2d 705, the Supreme Court held that there may be some federal constitutional errors which, in the setting of a particular case, are so unimportant and insignificant that they may, consistent with the federal constitution, be deemed harmless; but that before a federal constitutional error could be held harmless in a State criminal trial, the appellate court reviewing the conviction "must be able to declare a belief that it was harmless beyond a reasonable doubt." 17 L. Ed. 2d at page 711. We cannot reach that result here, since in a prosecution for possession and control of a narcotic drug it is not necessary for the State to allege or prove scienter to obtain a conviction, *Jenkins v. State*, 215 Md. 70, and hence the introduction into evidence of appellant's statement, in which he admitted such possession and control, may well have compelled him to testify in conformity with his statement, so as to prove that his connection with the drug was innocent and unknowing.

---

1. Appellant's statement was taken prior to the Supreme Court's decision in *Miranda* and at a time when the Maryland State Police, in taking confessions, were operating under the guidelines enunciated in *Escobedo v. Illinois*, 378 U. S. 478.

We further hold that where, as here, the appellant was interrogated by police in connection with a criminal offense which he was suspected of committing, and for which prosecution might ensue, the fact that he was, at the time of such interrogation, then in prison as a lawfully confined inmate would not operate to circumscribe the constitutional protections afforded by *Miranda*. The issue in that landmark case involved the admissibility in evidence of statements obtained from an accused during "custodial interrogation," meaning "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way" (*Miranda* at page 444). Without question, *Miranda* is primarily concerned with protection of the constitutional right against self incrimination in situations where an accused is "swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to * * * techniques of persuasion" (*Miranda* at page 461). Such is not precisely the case here, where appellant, already imprisoned, was taken by a police sergeant into the Assistant Warden's office for questioning concerning narcotics found on his person. Inmates must of necessity surrender some of their constitutional rights so that proper prison administration and discipline may prevail. In *Stewart v. State,* 1 Md. App. 309, 316, and *Smith v. State,* 1 Md. App. 297, 301, we held that searches of inmates by prison authorities were reasonably necessary in the fulfillment of the custodian's administrative duties. Similarly, interrogation by prison officials with relation to the maintenance of internal security and discipline and to the rules and regulations of the prison, where the thrust and purpose of the interrogation does not relate to a prosecution for any crime, does not fall within the ambit of the *Miranda* decision. See *State v. Levell,* 149 N. W. 2d 46 (Neb.).

Here, however, appellant was found by a prison guard to be in possession of narcotics. The drugs were taken from him, given to the acting Assistant Warden, and turned over to a State Police sergeant who subsequently interrogated appellant in the Assistant Warden's office. A statement having been elicited from him at that time, appellant was indicted for this offense less than a month thereafter.

In *United States v. Harrison,* 265 F. Supp. 660 (S. D. N. Y. 1967) a prison inmate was interviewed by an Internal Revenue agent with reference to a tax evasion charge. No *Miranda* warnings were given to him by the agent. The court there held that the interview could not "be sensibly viewed as anything but another instance of 'custodial interrogation' " and that no evidence obtained from the questioning could be used. As indicated, we find that the interrogation of appellant by Sergeant Grant was "custodial," and in connection with a prosecution for a criminal offense. The questioning was conducted four days after the narcotics had been found on appellant, and it was directed toward his subsequent indictment and prosecution. As the proper *Miranda* warnings were not given, the statement taken from appellant was improperly admitted into evidence by the court below, and here constitutes reversible error.

As our decision will necessitate a new trial, we deem it advisable to consider appellant's further contention that the fruits of Officer Gray's search were improperly admitted in evidence. As we stated in *Stewart v. State, supra,* and *Smith v. State, supra,* the search of a prison inmate is authorized by implication as reasonably necessary in the fulfillment of the custodian's duty to maintain prison security, to preserve order and discipline, to insure the safety of the prison population, and to see that the prisoners conduct themselves in a decent and orderly manner. Such a search is not unreasonable, and an inmate of a penal institution cannot claim constitutional immunity from search and seizure of his person by prison authorities.

*Judgment reversed; case remanded for a new trial.*